UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| GARY TAI, SHUIKEE COMPANY LIMITED, AND GOLDEN ESSENCE GLOBAL LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>JC FUNDING-5, LLC, a Missouri limited liability company; JEFF N. CROSSLAND, D-DESIGN LNO INC., a Nevada company; LESLIE DOTSON, an individual; and DOES 1-X, and DOES CORPORATION 1-X,<br><br>Defendants. | Case No. 2:17-cv-02588-MMD-PAL<br><br>ORDER<br><br>(ECF No. 12) |

**I.   SUMMARY**

Before the Court is *pro se* Defendant Jeff N. Crossland's ("Crossland") motion to dismiss ("Motion"), seeking dismissal of Plaintiffs Gary Tai ("Tai"), ShuiKee Company Limited ("ShuiKee") and Golden Essence Global Limited's ("Golden Essence") (collectively, "Plaintiffs") Verified Complaint (ECF No. 1), as asserted against him for lack of personal jurisdiction.[1] (ECF No. 12.) Plaintiffs filed an opposition (ECF No. 14), and

///
///

---

[1] Crossland also argues for dismissal of claims asserted against "his company"—JC Funding 5, LLC—but as a non-lawyer he cannot do so. (ECF No. 12 at 4.) *See, e.g.*, *In re America West Airlines*, 40 F.3d 1058, 1059 (9th Cir. 1994) ("Corporations and other unincorporated associations must appear in court through an attorney.") (collecting cases).

Crossland filed a reply (ECF No. 21). For the reasons set forth below, the Motion is granted.

## II. BACKGROUND

This case arises from a business transaction that apparently went awry. The following facts are taken from the Complaint and associated exhibits. (ECF Nos. 1, 1-1, 1-2, 1-3.)

Defendant D-Design LNO Inc. ("D-Design") is a Nevada Corporation. Defendant JC Funding-5, LLC ("JC Funding-5") is a Missouri limited liability company, located in Santa Monica, California. Crossland is "a member and manager of JC Funding[-5] and a California citizen." (ECF No. 1 at 5.) The other parties involved are citizens of other countries or states.[2]

In September 2013 Dotson approached Tai regarding an investment opportunity through which a new entity, D-Design, would be formed. D-Design was to acquire (1) a controlling interest in GoLink (China) Limited ("GoLink"), a Hong Kong corporation that Tai owned, and (2) the existing business of Fabrique Ltd. ("Fabrique"),[3] a Connecticut corporation ("the Transaction"). Dotson was the orchestrator of the Transaction.

Pursuant to the Transaction, in October 2013, Dotson and Crossland represented to Tai that Dotson would create D-Design to acquire GoLink and Fabrique, and Crossland, through JC Funding-5, would be the loan lender for the Transaction. In order to effectuate the Transaction, Dotson and Crossland asked Tai to deposit monies to facilitate the loan funding. It appears ShuiKee paid "Tai's contribution," into a designated Bank of America escrow account. ShuiKee ultimately deposited one million dollars, in the designated

///

---

[2] Tai is a foreign citizen from Hong Kong SAR. ShuiKee is a corporation organized under the laws of Hong Kong SAR. Golden Essence is a corporation organized under the laws of Hong Kong SAR. Defendant Leslie Dotson ("Dotson") was at all relevant times, the President, Secretary, Treasurer, and sole Director of D-Design, and a California citizen.

[3] These companies engage in, among other things, marketing and selling cases, sleeves, bags, backpacks, messenger bags, luggage, laptop cases, suitcases, brief cases and other similar goods.

escrow account, to facilitate the loan, pursuant to a Custodian Agreement between ShuiKee and JC Funding-5.

In furtherance of the Transaction, D-Design, GoLink, Golden Essence, and Tai entered into a Stock Purchase Agreement on April 30, 2014, along with two subsequent amendments, (collectively, "the SPA"). Neither Crossland nor JC Funding-5 were parties to the SPA. The SPA required D-Design to pay the purchase price in phases to Plaintiffs, and discusses conversion and the consequences for failure to pay the purchase price. The parties to the SPA agreed it would be governed by Nevada law.

D-Design and JC Funding-5 entered a Project Funding Agreement ("the Funding Agreement"), and a Promissory Note.[4] D-Design and JC Funding-5 agreed that the Funding Agreement was to be governed by Nevada law, with D-Design consenting to "the personal jurisdiction of the state and federal courts located in [Nevada], or any other court having personal jurisdiction over D-Design or the collateral in connection with any controversy related to this Agreement." (ECF No. 1-2 at 20.) Under this agreement, D-Design borrowed $11,050,000 from JC Funding-5 ("Loan"). The Loan was to, inter alia, finance the acquisition of Fabrique and a controlling interest in GoLink and refinance existing debt.

In October 2014, D-Design executed the Promissory Note "in the amount of $11,050,000 in favor of JC Funding." (*Id.* at 8.) However, JC Funding-5 allegedly never funded the Loan and retained $800,000 of ShuiKee's escrow deposit. Ultimately, D-Design failed to purchase GoLink stock from Golden Essence, or purchase Fabrique. D-Design returned monies to ShuiKee on September 15, 2014,[5] and May 28, 2015, respectively.

The Complaint asserts six (6) tort claims against Crossland. Crossland moves for dismissal, asserting a lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2),

///

---

[4] Plaintiffs' opposition alleges other agreements between D-Design and JC Funding-5, ECF No. 14 at 5), particularly a Collateral Agreement, and a Working Capital Loan Agreement (*id.*) The Court is unable to find these additional agreements among Plaintiffs' referenced exhibits.

[5] The Funding Agreement and the Promissory Note were entered into after D-Design's alleged return of monies to ShuiKee.

3

and improper venue, pursuant to 28 U.S.C. § 1406(a). Because the Court finds that Plaintiffs fail to demonstrate that the Court has personal jurisdiction over Crossland, the Court declines to address the remaining ground.

**III.    LEGAL STANDARD**

In opposing a defendant's motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansin*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where a defendant's motion to dismiss is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1127 (9th Cir. 2010) (internal quotation marks omitted). The plaintiff cannot "simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint must be taken as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (*quoting Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). The court "may not assume the truth of allegations in a pleading which are contradicted by affidavit," *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977), but it may resolve factual disputes in the plaintiff's favor, *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

**IV.    DISCUSSION**

A two-part analysis governs whether a court retains personal jurisdiction over a nonresident defendant. "First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute." *Chan v. Soc'y Expeditions*, 39 F.3d 1398, 1404 (9th Cir. 1994). Since "Nevada's long-arm statute, NRS § 14.065, reaches the limits of due process set by the United States Constitution," the Court moves on to the second part of the analysis. *See Baker v. Eighth Judicial Dist. Ct. ex rel. Cty. of Clark*, 999 P.2d 1020, 1023 (Nev. 2000). "Second, the exercise of jurisdiction must comport with federal due process." *Chan*, 39 F.3d at 1404–05. "Due process requires that nonresident defendants have certain minimum contacts with the forum state so that the exercise of jurisdiction

4

does not offend traditional notions of fair play and substantial justice." *Id.* (*citing Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). Courts analyze this constitutional question with reference to two forms of jurisdiction: general and specific jurisdiction.

Here, Plaintiffs only relies on specific jurisdiction. (*See generally* ECF No. 14.) Specific jurisdiction exists where "[a] nonresident defendant's discrete, isolated contacts with the forum support jurisdiction on a cause of action arising directly out of its forum contacts." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075 (9th Cir. 2011). Courts use a three-prong test to determine whether specific jurisdiction exists over a particular cause of action: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *Id.* at 1076 (*quoting Schwarzenegger*, 374 F.3d at 802)).

The party asserting jurisdiction, here Plaintiffs, bears the burden of satisfying the first two prongs. *Id.* (*citing Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). Personal jurisdiction is not established in the forum state where the plaintiff fails to satisfy either of these prongs. *Schwarzenegger*, 374 F.3d at 802. If a plaintiff satisfies both prongs, the burden shifts to the party challenging jurisdiction, here Crossland, to set forth a "compelling case" that the exercise of jurisdiction would be unreasonable. *CollegeSource, Inc.*, 653 F.3d at 1076 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

Plaintiffs argue that this Court has specific jurisdiction over Crossland because Crossland "had ample contact with Nevada and should have expected and anticipated that he would be hailed [sic] into court in this jurisdiction." (*See* ECF No. 14 at 7-9.) Plaintiffs fail to identify even Crossland's specific contact with Nevada. (*See generally id.*) The Court finds Plaintiffs fail to carry their burden to make out a prima facie case for specific jurisdiction over Crossland.

Where, as here, the claims sound in tort, the first prong for establishing specific personal jurisdiction is treated differently than it would be in a contracts case. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). (*See* ECF No. 14 at 8.) The inquiry is "whether a defendant purposefully directs his activities at the forum state, applying an *effects* test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id.* (internal quotations, bracket, and citations omitted) (emphasis added). The "effects test" imposes three requirements: "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant [knew was] likely to be suffered in the forum state." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007) (quoting *Yahoo! Inc.*, 433 F.3d at 1206)). "We consider the extent of the defendant's contacts with the forum and the degree to which plaintiff's suit is related to those contacts." *Id.* Where the cause of action *arises out of* a defendant's purposeful contact with the forum state, a single forum state contact can support specific jurisdiction. *Id.*

Plaintiffs' opposition presents muddled arguments and fails to distinctly address any of the elements for establishing purposeful direction under the "effects test." (*See generally* ECF No. 14 at 8-10.) In fact, it is unclear to the Court what specific elements going to the first prong, if any, Plaintiffs are advancing. Particularly, Plaintiffs proffer no facts that the Court could even surmise to show the third element of the "effects test"— "causing harm that the defendant [knew was] likely to be suffered in the forum state." *Id.* Instead, Plaintiffs lump together their discussion that is intended to show the first two prongs requisite to a finding of specific jurisdiction. (*Id.* at 9-10.) Plaintiffs appear to rely on the fact that one of the Defendants (D-Design) involved is a Nevada corporation and two of the pertinent agreements provide for application of Nevada law to establish personal jurisdiction over Crossland. (ECF No. 14 at 3-4.) The remainder of Plaintiffs' opposition addressing the jurisdiction issue focuses on the third prong that Crossland would have had the burden to establish. (*Id.* at 10-13.) The Court declines to do Plaintiffs' work to

establish specific jurisdiction. The Court finds Plaintiffs have failed to meet their burden of establishing a prima facie of jurisdictional facts. Therefore, the Court finds that it lacks personal jurisdiction over Crossland.

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Crossland's motion to dismiss for lack of personal jurisdiction (ECF No. 12) is granted.

DATED THIS 10th day of May 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE